# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

**IN ADMIRALTY**

IN THE MATTER OF:

THE COMPLAINT OF ORION
DREDGING SERVICES, LLC, F/K/A
SUBAQUEOUS SERVICES, LLC, AS
OWNER OF THE TUG BARBARA H, Its
Engines, Tackle, Appurtenances,
Equipment, Etc., IN A CAUSE OF
EXONERATION FROM OR LIMITATION
OF LIABILITY,

Case No. 3:09-cv-358-J-25HTS

    Petitioner.

## O R D E R

This cause is before the Court on Claimant, Timothy Sullivan's, Motion to Increase Security (Doc. #58; Motion). Petitioner, Orion Dredging Services, LLC (Orion), has filed opposition thereto. *See* Orion Dredging Services, LLC's Response to Claimant Timothy Sullivan's Motion to Increase Security (Doc. #64; Opposition). Thereafter, Claimant Timothy Sullivan's Notice of Filing Orion's Interrogatory Answers in Support of His Motion to Increase Security (Doc. #65) and Claimant Timothy Sullivan's Amended Notice of Filing Orion's Interrogatory Answers in Support of His Motion to Increase Security (Doc. #66; Amended Notice) were filed.

Orion filed this action seeking exoneration from or limitation of liability "for any damages or injuries caused by or resulting from an incident that occurred on or about October 20, 2008, while [its] vessel, [the tug *Barbara H*,] was being towed in the navigable waters in or near Cay Sal Bank, Bahamas[.]" Order (Doc. #4) at 1; *see also* Complaint for Exoneration from or Limitation of Liability (Doc. #1; Complaint) at 1. The Court granted the relief requested in the Motion to Approve Ad Interim Stipulation and Enter Monition and Injunction (Doc. #2; Motion to Approve) to the extent it ordered that

> [t]he further prosecution of any and all actions, suits and proceedings already commenced and the commencement or prosecution thereafter of any and all suits, actions, or proceedings, of any nature and description whatsoever in any jurisdiction, and the taking of any steps and the making of any motion in such actions, suits, or proceedings against Petitioner, or against the tug Barbara H or against any property of Petitioner except in this action, to recover damages for or in respect of any damages or injuries caused by or resulting from the matters alleged in the Complaint . . . are restrained, stayed, and enjoined until the hearing and determination of this action.

Order (Doc. #4) at 3-4.

According to Mr. Sullivan, he was employed by Orion, and was "working as [a] seam[a]n aboard the BARBARA H" during the incident. Claimant, Timothy R. Sullivan's Claim (Doc. #14) at 3. It is alleged Mr. Sullivan was injured when "the M/T BARBARA H rolled over on her side and s[a]nk[.]" *Id.; see also id.* at 5. He claims

Petitioner's negligence, manifested through a multitude of actions and inactions, caused the disaster. *See id.* at 3-6. Mr. Sullivan asserts he has suffered, inter alia, "lost wages[,] diminishment of earning capacity[,] great pain and [the] inability to lead a normal life[.]" *Id.* at 6.

The limitation statute provides in relevant part "the liability of the owner of a vessel for any claim, debt, or liability described in subsection (b) shall not exceed the value of the vessel and pending freight." 46 U.S.C. § 30505(a). Representing "[t]he Vessel's value at the termination of the subject voyage was $0.00[,]" Motion to Approve at 2, and that "there was no freight pending within the meaning of the Limitation Act[,]" Complaint at 3, Orion deposited no security with the Court.

However, Mr. Sullivan now contends Petitioner "should be required to post security in the form of a bond or Ad Interim Stipulation based on the 'flotilla doctrine[.]'" Motion at 1. Besides the value of the vessels allegedly constituting a flotilla, he requests that the bond represent "all appurtenances aboard the vessels." *Id.* Characterizing "the money that Orion was going to earn under its dredging contract . . . as 'pending freight[,]'" Movant claims an equivalent sum must also be included in the bond. *Id.*

"The flotilla doctrine provides that the vessel's owner's liability 'may be increased to include his interest in the value of all vessels engaged in a common enterprise or venture with the vessel aboard which the loss or injury was sustained.'"  *In re Weeks Marine, Inc.*, No. 8:00CV185, 2000 WL 33389207, at *3 (M.D. Fla. Nov. 30, 2000) (report and recommendation of magistrate judge) (quoting *In re Patton-Tully Transp. Co.*, 715 F.2d 219, 222 (5th Cir. 1983)), *adopted by* Order (Doc. #44) in case 8:00-cv-185-T-23F. The principle has traditionally been "applied to shipping contracts," but "is also applicable in personal injury claims between an employee and his employer."  *Id*.  "Petitioner admits Claimant Sullivan was a seaman aboard the Tug *BARBARA H* on or about October 20, 2008, and further admits Claimant Sullivan was employed by Petitioner."  Subaqueous Services, LLC's Objection, Answer, and Affirmative Defenses to the Amended Claim of Timothy R. Sullivan (Doc. #19) at 1.  Thus, it stands undisputed there is a contractual employer-employee relationship.

It has been said two tests have been used to determine whether the flotilla doctrine can be applied in an action.  "Some courts consider whether a particular vessel is part of [a] 'common venture' such that it is 'necessary to the performance of the contract[,]'" whereas others have "appl[ied] a three[-]part test which includes: (1) common ownership; (2) common enterprise; and

"The flotilla doctrine provides that the vessel's owner's liability 'may be increased to include his interest in the value of all vessels engaged in a common enterprise or venture with the vessel aboard which the loss or injury was sustained.'"  *In re Weeks Marine, Inc.*, No. 8:00CV185, 2000 WL 33389207, at *3 (M.D. Fla. Nov. 30, 2000) (report and recommendation of magistrate judge) (quoting *In re Patton-Tully Transp. Co.*, 715 F.2d 219, 222 (5th Cir. 1983)), *adopted by* Order (Doc. #44) in case 8:00-cv-185-T-23F. The principle has traditionally been "applied to shipping contracts," but "is also applicable in personal injury claims between an employee and his employer."  *Id*.  "Petitioner admits Claimant Sullivan was a seaman aboard the Tug *BARBARA H* on or about October 20, 2008, and further admits Claimant Sullivan was employed by Petitioner."  Subaqueous Services, LLC's Objection, Answer, and Affirmative Defenses to the Amended Claim of Timothy R. Sullivan (Doc. #19) at 1.  Thus, it stands undisputed there is a contractual employer-employee relationship.

It has been said two tests have been used to determine whether the flotilla doctrine can be applied in an action.  "Some courts consider whether a particular vessel is part of [a] 'common venture' such that it is 'necessary to the performance of the contract[,]'" whereas others have "appl[ied] a three[-]part test which includes: (1) common ownership; (2) common enterprise; and

(3) single command." *In re Weeks*, 2000 WL 33389207, at *3 (quoting *In re Tom Quinn Co.*, 806 F. Supp. 945, 948 (M.D. Fla. 1992)).

Claimant does not advocate for one standard over another. *See* Motion at 7. Petitioner, on the other hand, acknowledges only the three-factor "test" and asserts "[t]he claimant must also show the additional vessels contributed in some degree to the casualty." Opposition at 4. Although some courts may treat the items considered as absolute prerequisites, c*f. In re Offshore Specialty Fabricators, Inc.*, No. CIV.A.01-2227, 2002 WL 827398, at *2 (E.D. La. Apr. 30, 2002), perhaps the best approach is to view them more as factors guiding the inquiry of whether a common venture existed such that it would be appropriate to require the posting of security to represent a group of vessels. *Cf. In re Tom Quinn Co.*, 806 F. Supp. at 949 (noting that "[n]owhere in either decision" being discussed "is it stated that the district court's finding of a single command was necessary to reach the result"). Of these factors, common ownership and enterprise seem most important, followed by single command. Actual contribution by other vessels to the casualty, while potentially of significance, is not under the circumstances a necessary element.

A review of the record reveals during the relevant time period Orion was under contract with Misener Marine Construction, Inc. to perform the dredging work for a cruise ship pier in Haiti. *See*

Motion at 2; *cf*. Opposition at 2.  It is uncontested that at the date of the accident, the *Barbara H*, owned by Petitioner, was being towed to the site to participate in the dredging work.  *See* Motion at 2; Opposition at 2.  Claimant contends the *Mobro 2503*, a "bareboat chartered . . . freight barge[,]" Opposition at 1, which was (along with the *Barbara H*) being towed by the *El Puma Grande*, also formed part of the flotilla.  *See* Motion at 3.  Further, he argues other vessels, including the tug *Colonel*, the dredge *Curtis K Huggins*, and the barge *M 1801*, which were "traveling to Labadee, Haiti to participate in Orion's dredging operation[,]" *id.* at 2, should be deemed part of the flotilla for purposes of determining an increased bond amount.  *See id.* at 2-3.

Apparently Mr. Sullivan intends for the Court to consider the full dredging operation to be the common venture between the vessels.  *See id.* at 8.  Petitioner, on the other had, maintains the interpretation of "common venture" here should be limited "to the particular voyage to Haiti during which the *Barbara H* sank . . ., not the entire dredging project." Opposition at 5.  To the extent dredging had not begun and the "'voyage' in this case was wholly preliminary to the performance [of the] dredging contract[,]" *id.* at 9, the Court agrees with Petitioner.  *Cf. In re Offshore Specialty Fabricators, Inc.*, 2002 WL 827398, at *2 n.4.

The relevant voyage would thus involve the endeavoring of the tug *El Puma Grande* to transport the barge, tug, and their contents.

It is represented only the barge *Mobro 2503* was either owned or chartered by Petitioner and part of the voyage at hand (as denoted above). *See* Opposition at 5-6; *id.* at 6 (Petitioner stating that, while it owned the *Curtis K Huggins*, "the dredge . . . was separately towed to Haiti [and] could not be part of the relevant voyage and [thus] should not be included in the limitation fund"). Hence, it is admitted the *Mobro 2503* "could be considered commonly owned . . . by Petitioner for purposes of the" limitation act. *Id.* at 5.

Single command was absent, however, according to Orion, because it "did not have nautical command over the purported flotilla. The tug *EL PUMA GRANDE*, owned by Claimant Mobro, navigated the flotilla and had actual nautical command over the *BARBARA H* and the *MOBRO 2503*." *Id.* at 6. Whereas Petitioner's understanding of single command may be too narrow, *cf., e.g., In re Offshore Specialty Fabricators, Inc.*, 2002 WL 827398, at *4-5, Claimant's identification of a "dredging superintendant[,]" Motion at 8, seems premised on too broad a definition. Nevertheless, having assessed the relevant factors, and single command not being strictly necessary, it is determined the value of the barge *Mobro 2503* should be included in the limitation fund. Orion has stated

the insured value of the barge was $750,000.00.  *See* Orion Dredging Services, LLC's Answers to Claimant Timothy R. Sullivan's First Supplemental Interrogatories, attached to the Amended Notice, at 3.

Concerning appurtenances, Orion avers "the barge *MOBRO 2503* was carrying cargo destined for the dredging project in Haiti. This cargo included a small tugboat, generators, an excavator and other miscellaneous spare parts and construction equipment." Opposition at 7.  It claims that, "although the cargo . . . was owned by Petitioner and was destined to be used in the dredging project, the cargo was not necessary to the accomplishment of this particular voyage and did not belong to the barge."  *Id.* at 8 (quotation marks omitted).  "To determine whether an item is an appurtenance to a vessel, we must look to the relation it bears to the actual service of the vessel."  *Anderson v. United States*, 317 F.3d 1235, 1238 (11th Cir. 2003) (per curiam) (internal quotation marks and bracketing omitted).  As the precise use, vis-a-vis the barge, of the items identified is unclear, they will not be deemed appurtenances.

Pending freight consists of "monies earned by the vessel owner during the voyage."  *In re Grand Casino of Mississippi, Inc. Biloxi*, No. 106-CV-195-LG-RHW, 2007 WL 188265, at *2 (S.D. Miss. Jan. 23, 2007).  Put otherwise, it "is the price paid for the entire voyage during which the casualty occurs."  *In re Falcon*

*Inland, Inc.*, No. Civ.A. 97-1034, 1998 WL 185222, at *1 (E.D. La. Apr. 16, 1998) (internal quotation marks omitted); *cf. id.* at *2 (noting "courts have held that the value of certain vessel contracts, other than the carriage of goods or passengers, is properly included as pending freight"). "Freight is generally not 'earned,' and thus is not 'pending,' until the cargo is carried to and delivered at the place of destination." *In re Caribbean Sea Transp., Ltd.*, 753 F.2d 948, 949 (11th Cir. 1985) (per curiam). It has not been indicated any freight, pursuant to this definition, is pending with regard to the relevant voyage. *Cf. Man Ferrostaal, Inc. v. M/V Vertigo*, Nos. 05 Civ. 10326(AKH), et al., 2007 WL 4694091, at *2 (S.D.N.Y. July 11, 2007) ("Because claimants have made no showing that [the vessel owner] collected or was due any freight charges for the voyage . . . claimants' motion to increase security for [its] interest in pending freight is denied." (capitalization omitted)). Even if the Court were to deem a portion of the dredging contract to be pending freight, no practical method has been proposed to calculate the sum attributable to the voyage of the *Mobro 2503.* Under the circumstances presented herein, no additional security must be contributed as pending freight.

Accordingly, the Motion (Doc. #58) is **GRANTED** to the extent Petitioner shall file an amended ad interim stipulation reflecting

the value of the barge *Mobro 2503*.  In that regard, if Orion does not assent to the amount specified in the Amended Notice,[1] the following procedure shall govern:

    1)    Petitioner and Claimant (the "parties") are instructed to meet and make every effort to agree upon an appropriate sum within twenty (20) days from the date of this Order.  If agreement is achieved, Orion then has ten (10) days from expiration of the 20-day period to file the amended ad interim stipulation.

    2)    If a resolution cannot be reached, the parties shall thereafter have ten (10) days within which to file a written stipulation to an appraiser who will conduct an appraisal of the barge.  The appraisal report shall be completed as soon as practicable and filed promptly.

    3)    The parties then have ten (10) days from the filing of the report to file any objection to the same.

    Otherwise, the Motion is **DENIED**.

    **DONE AND ORDERED** at Jacksonville, Florida, this 23rd day of December, 2009.

    /s/    Howard T. Snyder
HOWARD T. SNYDER
UNITED STATES MAGISTRATE JUDGE

---

[1] If Petitioner has no objection to this amount, it shall have thirty (30) days from the date of this Order within which to file the amended ad interim stipulation.

Copies to:

Counsel of record and
    pro se parties, if any